[No. 9049.   Department Two.   December 21, 1910.]

F. R. MARGETTS, *Respondent*, v. E. R. LINDSEY, *Appellant*.[1]

SALES—RESCISSION BY VENDEE—FRAUD—LACHES—EVIDENCE—SUF-
FICIENCY.   An action to rescind a sale of a reporting business, for
false representations as to the income of the business, is properly
dismissed, where it appears that the vendee had ample opportunity
to make, and did make, a full investigation as to the truth of the
representations, and inspected the books, making no objections to
the sale for over a month after taking up the business, and the
parties were dealing at arm's length.

Appeal from a judgment of the superior court for Spokane
county, Huneke, J., entered December 16, 1909, upon findings
in favor of the plaintiff, after a trial on the merits before
the court without a jury, in an action on promissory notes.
Affirmed.

*W. H. Plummer*, for appellant.

*Charles P. Lund*, for respondent.

DUNBAR, J.—This action was brought by the respondent
against the appellant, to recover $500, interest, and attor-
ney's fees, upon five promissory notes, executed by the appel-
lant, E. R. Lindsey, to the respondent, F. R. Margetts, each
of said notes being for the sum of $100 and dated January
12, 1909, due and payable respectively on March 12, 1909,
April 12, 1909, May 12, 1909, June 12, 1909, and July 12,
1909.   The complaint was in the usual form in a suit on
promissory notes, alleging their execution and default in the
payment, demanding the amount of the notes with interest,
and attorney's fees, $50.   The answer admitted the execution
of the notes, denied that there was anything due; and set up
as an affirmative defense, that the notes were given as part
payment of the purchase price for respondent's half interest
in the court reporting business of Pelletier & Margetts in

[1]Reported in 112 Pac. 339.

the city of Spokane, Washington; that on or about the 8th day of January, 1909, at the special instance and request of respondent, appellant gave up his business in the city of Vancouver, British Columbia, and came to Seattle, where Margetts met him, and there negotiations were had which resulted in appellant's purchasing the interest of Margetts in said reporting business, agreeing to pay him therefor $1,300, $50 of which was then and there paid; that thereafter Lindsey and his wife moved to Spokane, when $650 more was paid, and the contract of sale entered into; that during the negotiations which were had between Margetts and Lindsey in Seattle, Margetts misrepresented the condition of said reporting business, lied to and deceived appellant by purporting to show in writing the amount of money that had been received by the firm of Pelletier & Margetts during the twenty months previous to said time, and lied to and deceived him in other ways; that upon discovering the false and fraudulent representations, he immediately rescinded the contract, and tendered to Margetts said business and the contract; asked that the said notes be cancelled, and that appellant have judgment for the amount of money which he had paid. The case was tried by the court, and findings made in favor of plaintiff. The findings of fact and conclusions of law as found by the court were excepted to. Judgment was entered for the amount prayed for, and from such judgment, this appeal is taken.

Upon the conclusion of the testimony, the court remarked: "I am convinced from the testimony here that there is no evidence of any fraud on the part of Mr. Margetts, either actual or constructive;" and further said that he had not any hesitancy at all, from the evidence, in finding for the plaintiff and against the defendant. From a review of the testimony, we think the court was amply justified in coming to this conclusion. Conceding the truth of the statement made by the appellant, that the respondent in the conference held by them in Seattle had misrepresented the financial

standing of the partnership—although this is denied by Margetts, all the testimony, including that of the appellant, shows that he had ample opportunity to investigate the financial standing and past history and future prospects of the business, before the final consummation of the purchase.

It appears from the testimony of the appellant himself, brought out on cross-examination, that about a month before his conference with the respondent at Seattle, he had visited Spokane during the apple show there; and while he faintly denied that he was looking around then for a location contemplating his removal from Vancouver, it does appear that several times he visited the office of Pelletier & Margetts; that he talked with them about the reporting business in Spokane; that he had under consideration a purchase of the reporting business of one Mrs. Scott, and that he talked with Margetts and Pelletier about Mrs. Scott's business, they stating that they were very anxious to get Mrs. Scott out of the reporting business in Spokane; that after he went home and before receiving the letter from Margetts which finally led up to the execution of the contract, he sent Mrs. Scott an offer for her business. It also appears that, after arriving in Spokane, on the day on which the contract was executed, he received certain of the books of the firm from Margetts, and took them to his rooms at the hotel where he and his wife were stopping; and while he says that he did not remember telling Margetts at about three o'clock in the afternoon that he had examined these books, the whole testimony shows that he had, to a certain extent, examined them, and that if he had not it was his own fault. It is true, he stated that he had only the ledger and the cash book at the hotel with him, and that he could not tell definitely about the business of the concern without the daybook. But there is nothing to show that he could not have received the daybook by asking for it, and it was not until about half past seven o'clock that evening that he finally paid over the $600 and entered into the contract.

In addition to this, one of the notes which was executed

fell due on February 12, 1909, and that note was paid by him to Margetts without any objection, on the date of its maturity, after he had been engaged in the business as an active partner for one month. Again, on February 23, he wrote to Margetts asking for an extension of time for the payment of the next note, which would fall due on the 12th of March following. This extension being refused on March 2, 1909, he wrote to the respondent that, on account of fraud and misrepresentation perpetrated upon him, he tendered back the business of court reporting, and demanded the return of his money. He, however, brought no action to rescind the contract or to affirm it and sue for damages, but contented himself with continuing in the business, and receiving the benefits of the business until the notes had matured and this suit was brought.

It is true, he says that, after he went into the office, he found that the business was not such as it had been represented to be, and that the books showed that they had not received the amount for the past twenty months that it had been represented to him that they had received; and that he did not have access to the daybook so that he could ascertain this fact, until about the time when he had refused payment on the notes. This testimony was very vigorously denied by both Margetts and Pelletier. Mr. Pelletier, when asked if he had heard the testimony to the effect that Lindsey had asked him for the books and that he told him that there was no use examining them; that the statement made by Mr. Margetts was correct, responded: "Yes, I heard that testimony, and it is absolutely false. He never called on me for the books when I made any statement of that kind at all. The first time he called on me for the books I gave him the key then." Witness further states, that the desk to which he had given the key was a roller top desk; that all the books pertaining to the business were in the drawers, which were opened when the roller lid was let down; and all the circumstances surrounding the case point to the truthfulness of the

testimony of Mr. Pelletier. Even accepting his own state-
ment, appellant could not prevail. The parties to the con-
tract were strangers; no confidential relations existed; the
means of ascertainment were available, and by entering into
an investigation which ordinary prudence would suggest, the
approximate value of the business could have been determined.
Under such circumstances the law will not sanction the
abrogation of a written contract. Affirmed.

RUDKIN, C. J., CROW, CHADWICK, and MORRIS, JJ., concur.